**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise Denslow, | No. CV-19-01718-PHX-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Denise Denslow (formerly Denise Schatt) seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is based on legal error and the record is fully developed, the Commissioner's decision will be vacated, and the matter remanded for a calculation of benefits.

**I.     Background.**

On March 19, 2015, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning November 14, 2014. On August 9, 2017, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 10, 2018, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to

step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022, and that she has not engaged in substantial gainful activity since May 2017. At step two, the ALJ found that Plaintiff has the following severe impairments: chronic interstitial cystitis, spastic pelvic floor syndrome, thyroid disorder, and obesity (20 CFR 404.1520(c)). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b), with the following exceptions: occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolding; frequently balance, avoid concentrated exposure to extreme cold, extreme heat, and vibration; no exposure to dangerous machinery or unprotected heights.

(AR 37-38).

The ALJ further found that Plaintiff is able to perform her past relevant work as an administrative clerk, secretary, and education courses sales representative. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.     Analysis.**

Both parties agree that the ALJ's decision is defective for failure to comply with the requirements of Social Security Ruling (SSR) 15-1P, 2015 WL 1292257 (March 18, 2015). As a result, the parties both request that the Court remand the matter to the ALJ. (*See* Docs.

14, 16, 17). The only dispute is whether the case should be remanded for calculation of benefits or for further administrative proceedings. The Court will address each argument below.

### A. Legal Standard.

The Social Security Act provides that courts are "empowered to affirm, modify, or reverse a decision by the Commissioner 'with *or without* remanding the case for a rehearing.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)) (emphasis in original). Courts have the power to remand a determination by the Commissioner with instructions to calculate and award benefits "when it is clear from the record that a claimant is entitled to benefits . . . ." *Id.*

> In cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true.

*Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). The "credit-as-true rule" applies to both claimant testimony and medical opinion evidence. *Garrison*, 759 F.3d at 1020 (citing *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989)).

In order for a district court to exercise its discretion to employ the "credit-as-true" rule, three factors must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. But even if all three factors are satisfied, a district court retains "flexibility" in deciding the appropriate remedy. *Id.* (citing *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)).

"[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in

- 4 -

discrediting their testimony." *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014)). Rather, remand for further proceedings may be required "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotation marks omitted).

> In conducting this review, the district court must consider whether there are 'inconsistencies between [the claimant's] testimony and the medical evidence in the record,' or whether the government has pointed to evidence in the record 'that the ALJ overlooked' and explained 'how that evidence casts into serious doubt' the claimant's claim to be disabled.

*Id.*, 808 F.3d at 407 (quoting *Treichler*, 775 F.3d at 1106; *Burrell*, 775 F.3d at 1141) (internal citations omitted).

### B. The Record is Fully Developed.

Here, the "threshold requirement" of the ALJ's legal error is met, as the Commissioner concedes:

> that the Administrative Law Judge (ALJ) did not consider the requirements of Social Security Ruling (SSR) 15-1p, Titles II and XVI: Evaluating Cases involving Interstitial Cystitis (IC), 2015 WL 1292257 (March 18, 2015), in evaluating Plaintiff's claims. . . . Here, the ALJ found that Plaintiff had the severe impairment of IC (Administrative Record (AR) 32), but did not comport with the guidance in SSR 15-1p in developing the evidence or evaluating the impairment.

(Doc. 16 at 1); *see Dominguez*, 808 F.3d at 408 (holding the threshold was met when it was undisputed that the ALJ erred in rejecting a doctor's opinions). Therefore, we begin by reviewing the record and the claimant's testimony. Plaintiff testified and the ALJ found that Plaintiff only had one 13-month period of "substantial gainful activity" in the five years since she applied for benefits. (AR 30). There were two periods of unemployment, from November 2014 to April 2016, and from May 2017 until the present. (AR 32). Based on the Plaintiff's testimony, the ALJ found that Plaintiff stopped working in 2014 due to "severe pain and extreme fatigue from interstitial cystitis, pelvic floor dysfunction, and degenerative disc disease." (AR 32). The ALJ further noted Plaintiff's testimony that Plaintiff was in "constant pain, had pain with urination, bladder muscle spasms, occasional

nausea, and poor sleep causing extreme fatigue." (AR 32). Plaintiff testified this was because of her interstitial cystitis, which caused her trouble reading, interpreting, or making sense of basic instructions. (AR 51-74). Additionally, she testified that she had to use the restroom every 20 or 30 minutes. (AR 32, 63, 77). Plaintiff testified that she seeks treatment from multiple doctors, has undergone multiple surgeries, engages in physical therapy, and takes narcotics, opium, and belladonna for pain, in addition to hormones and other supplements. Due to her medications, Plaintiff cannot drive and spends most days on the couch or in bed due to fatigue. (AR 67-68).

In reviewing the medical evidence, the ALJ found it "confirms a history of treatment for chronic interstitial cystitis and thyroid disorder." (AR 33). The ALJ found that in November 2014, Plaintiff's primary care doctor completed the necessary paperwork for a medical leave of absence due to fatigue from Addison's disease (although her physicians later ruled out the condition), and this medical leave continued through August 2015. (AR 33). In May 2015, Plaintiff began seeing an endocrinologist for extreme fatigue and the doctor confirmed she had hypothyroidism. In the fall of 2015, she was diagnosed with chronic cystitis and was given various medications and therapies to treat the condition through 2016. In March 2016, a urologist performed bladder irrigation; and Plaintiff required emergency room care afterwards for severe pain. Plaintiff continued taking vaginal valium and was encouraged to engage in physical therapy. In the fall of 2016, under the care of a different urologist, she had an InterStim implantation, but she continued to "void every 30 minutes." (AR 34). In November 2016, the urologist performed hydrodistension, a bilateral pudendal nerve block, and a Neurostim placement. Between January and May 2017, Plaintiff engaged in six sessions of physical therapy for abdominal and pelvic floor exercises and strengthening.

In May 2017, Plaintiff underwent laparoscopic lysis of adhesions, resection of endometriosis, and a pudendal nerve block. (AR 989). The ALJ noted that Plaintiff received work notes to "keep her off work until June 21, 2017, and then to allow work from home until June 28, 2017." (AR 34, 995, 998). Plaintiff received a work status note on

July 10, 2017, advising that she could return to work "with restrictions" and a reference to the Americans with Disabilities Act ("ADA") paperwork regarding the restrictions. (AR 34, 1008).[1] After Plaintiff reported that her bladder pain increased or had not improved, Plaintiff was prescribed Botox injections in July 2017. (AR 1011-14). Plaintiff's current treatment includes the pain relievers, Nucynta and Percocet, which are refilled on a monthly basis. The ALJ opines that these medications control Plaintiff's pain "reasonabl[y] well, without side effects," although the Plaintiff testified that she still has significant pain, a level five or six, resulting in brain fog, fatigue, difficulty concentrating, and an inability to drive. (AR 35, 67, 69).

Plaintiff's testimony is substantially supported by the medical record. In the Commissioner's Motion to Remand, the Commissioner claims that "further development of this case is needed to make sure the [Interstitial Cystitis] evidence was developed in accordance with the appropriate agency policy." (Doc. 16 at 3). However, the Commissioner does not list any factual or evidentiary holes in the record or what further evidence is necessary. In fact, as noted above, the ALJ found that the current record did "confirm a history of treatment for chronic interstitial cystitis." (AR 33).

### C. The ALJ Failed to Provide Legally Sufficient Reasons for Discounting the Evidence Regarding Interstitial Cystitis.

The ALJ found that the "medically determinable impairments significantly limit the claimant's ability to perform basic work activities as required by SSR 85-28 and, in the case of obesity, by SSR 02-1p." (AR 36). The ALJ discussed various conditions of Plaintiff, but ultimately found they did not meet the severity of the required listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ stated that the Plaintiff's "need for chronic pain management arises out of pain related to interstitial cystitis, not degenerative disc disease or other back impairment." (AR 38). Notably, however, the ALJ does not discuss the severity of the interstitial cystitis and whether this impairment, taken

---

[1] The Commissioner does not dispute that the doctor's orders contained restrictions but, in her opinion, the ALJ notes the specific restrictions were not admitted into the record. (AR 34).

with her other impairments, meets the severity requirements of the regulations.

Under step four of the SSA's policy for evaluating a claimant with interstitial cystitis, the ALJ "must consider all of the person's impairment-related symptoms in deciding how such symptoms may affect functional capacity." SSR 15-1P, 2015 WL 1292257 (Mar. 18, 2015). The policy identifies potential issues relating to interstitial cystitis:

> For example, many people with IC have chronic pelvic pain, which can affect the ability to focus and sustain attention on the task at hand. Nocturia may disrupt sleeping patterns and lead to drowsiness and lack of mental clarity during the day. Urinary frequency can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night. Consequently, some individuals with IC essentially may confine themselves to their homes.

*Id.* Based on Plaintiff's testimony and the ALJ's own findings, Plaintiff suffered from all these issues. Plaintiff testified that she had extreme fatigue, brain fog, and trouble "reading or interpreting, extrapolating . . ." because she is "always in this much pain and [] always this tired." (AR 65). She also stated she uses "the restroom every 20 to 30 minutes." (AR 65). She stated she sees a physical therapist to help with the "pelvic floor dysfunction" that creates "muscle spasms around the bladder, make[s] muscle spasms in the vagina, pain during sex, dryness." (AR 66). She testified that her pain medication assists with the pain, but it is not "completely under control" and causes her brain fog, fatigue, difficulty in concentration, and an inability to drive. (AR 67). She also has "trouble sleeping at night so [she's] usually up to go to the bathroom several times" due to the pain and her frequency of urination. (AR 67). She also stated that "on bad days I'm literally in the bed all day or on the couch all day." (AR 68). Plaintiff testified that she was let go from her part-time job in 2017 because of her condition. (AR 72). She said her work performance was impaired by her necessity to get up and go to the bathroom so frequently. Eventually, this led to the employer firing her and telling her the "disability was the reason they were letting me go." (AR 73).

The ALJ did not consider any of these symptoms in determining the severity of Plaintiff's condition, except for confirming "insomnia" due to poor sleep and waking to

1  urinate. (AR 35-36). Such a failure is error under the regulation, which requires the ALJ
2  to "consider *all* of the person's impairment-related symptoms" in determining the RFC.
3  SSR 15-1P, 2015 WL 1292257 (Mar. 18, 2015) (emphasis added).[2]

### D. The ALJ Would be Required to Find the Claimant Disabled on Remand.

The Commissioner argues that the record creates "questions" as to whether the Plaintiff is disabled. (Doc. 16 at 3). In support of his position, the Commissioner argues that Plaintiff worked at a substantial gainful activity level for over a year after the alleged onset date, and that she was cleared to return to work in July 2017. (*Id.*).

As an initial matter, Plaintiff concedes that she is not eligible for benefits prior to May 2017, when she stopped engaging in substantial gainful activity due to her condition. (Doc. 17 at 2). Plaintiff is not seeking benefits during the time of her employment. By the ALJ's own analysis in step one, the decision "focuses on the periods outside of the work activity" i.e. namely from November 2014 to April 2016 and from May 2017 to present. (AR 33). Regardless of the ALJ's finding in step one that Plaintiff had two periods of unemployment sandwiching a 13-month period of substantial gainful activity, the ALJ proceeded to review the case for those two periods of unemployment, implicitly acknowledging Plaintiff may qualify for benefits during those periods.

Plaintiff's period of employment does not cast doubt on Plaintiff's disability. According to Plaintiff, she was only able to work part-time at the prior job and was let go due to her disability. The employer stated it was no longer able to provide the significant accommodations necessary for her disability. Plaintiff's testimony, as documented by the ALJ, stated that her symptoms worsened over her period of work activity. The relevant doctor's work notes cleared her to return to work "with restrictions." (AR 1008). Although Plaintiff worked and earned "significant amounts," this was prior to her claim that her symptoms were worsening in the May-July 2017 period.

The Commissioner cites to *Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) for the

---

[2] Although the ALJ noted Plaintiff's chronic pain management arose from her interstitial cystitis, the ALJ only considered whether the degenerative disk disease (which Plaintiff admitted did not cause the lion's share of her pain) "more than minimally limits the claimant's ability to perform basic work activities." (AR 37).

proposition that doubts remain as to Plaintiff's disability and further development of the record is necessary. (Doc. 16 at 3). The Commissioner's argument is not persuasive. First, *Burrell* is inapposite. In that case, the court found that the claimant's testimony appeared to contradict the medical record. *Burrell*, 775 F.3d at 1141-42 ("We conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled" because "evidence in this record not discussed by the ALJ suggests Claimant may not be credible."). But no such contradiction exists here. As discussed above, Plaintiff's allegations are consistent with the medical record. The Commissioner does not "point to anything in the record that the ALJ overlooked and explain how that evidence casts into serious doubt [Plaintiff's] claim to be disabled." *Garrison*, 759 F.3d at 1022.

Second, the Commissioner's argument is undermined by the testimony of the Vocational Expert (VE) at the hearing. There, the VE testified that if a person was limited to light work but would require frequent breaks of five minutes every 20 to 30 minutes, they would not "be able to engage in work activity." (AR at 79). At step five, the "burden shifts to the Commissioner to prove that, based on the claimant's residual functional capacity, age, education, and past work experience, she can do other work." *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996); *Tackett*, 180 F.3d at 1098. The VE testified that someone with a condition requiring them to get up and go to the bathroom at the intervals the Plaintiff necessitates would prohibit them from being able to "engage in work activity." (AR 78). The ALJ's explanation for finding "inconsistency" with Plaintiff's testimony regarding her frequency of urination was that she was able to return to work for over a year, even if only part-time and with significant accommodations. Plaintiff's ability to work for that period, however, does not contradict Plaintiff's testimony that her symptoms worsened during that time, and this was ultimately why she needed additional procedures. The doctor's notes allowing her to return to work after these procedures in July 2017 cited ADA restrictions, which provided further support for Plaintiff's testimony.

**V.  Conclusion.**

In this case, the Commissioner concedes the ALJ's decision was based on legal error and moves to remand for additional proceedings. The Commissioner, however, does not point to any evidence in the record that creates serious doubt as to Plaintiff's disability. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails let's play again' system of disability benefits adjudication," and allow the "ALJ to have a mulligan." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Garrison*, 759 F.3d at 1020. The Court, therefore, remands the case for calculation of benefits from the amended onset date of May 2017.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated,** and this case is **remanded** for an award of benefits. The Clerk shall enter judgment accordingly and **terminate** this case.

**IT IS FURTHER ORDERED** that the Commissioner's Motion to Remand (doc. 16) is **denied** as moot.

Dated this 6th day of March, 2020.

*[signature: Michael T. Morrissey]*
Honorable Michael T. Morrissey
United States Magistrate Judge